**Rolf L. LINDSTROM, Plaintiff,**

v.

**AC PRODUCTS LIABILITY TRUST, et al., Defendants.**

**No. 1:98CV13222.**

United States District Court, N.D. Ohio, Eastern Division.

May 2, 2003.

Donald A. Krispin, Jaques Admiralty, Robert E. Swickle, The Maritime Asbestosis Legal Clinic, Detroit, MI, for Plaintiff.

Laura K. Hong, Squire, Sanders & Dempsey, Cleveland, OH, Gregg L. Spyridon, Spyridon, Koch, Psarellis, Wallace, Palermo, Metaire, LA, Byron J. Horn, Pamela Zarlingo, Richard C. Binzley, Thompson, Hine, LLP, Cleveland, OH, Richard D. Schuster, Vorys, Sater, Seymour & Pease, Columbus, OH, Daniel C. Urban, Arter & Hadden, Jeffrey A. Healy, Arter & Hadden, Joseph J. Morford, Arter & Hadden, Cleveland, OH, George F. Fitzpatrick, Swanson, Martin & Bell, Chicago, IL, Matthew C. O'Connell, Kaye, Scholer LLP, New York City, Brian S. Rudick, Kirkpatrick & Lockhart, Pittsburgh, PA, Patrick F. Haggerty, Frantz Ward, Cleveland, OH, James W. Bartlett, III, Semmes, Bowen & Semmes, Baltimore, MD, Nicholas L. Evanchan, Jr., Evanchan & Palmisano, Ralph J. Palmisano, Evanchan & Palmisano, Terri L. Nass, Evanchan & Palmisano, Akron, OH, John A. Heller, Sidley, Austin, Brown & Wood, Chicago,

IL, Reginald S. Kramer, Oldham & Dowling, Akron, OH, Alton L. Stephens, Jr., Gallagher, Sharp, Fulton & Norman, Daniel J. Michalec, Gallagher, Sharp, Fulton & Norman, Eric H. Mann, Gallagher, Sharp, Fulton & Norman, Kevin C. Alexandersen, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, Walter Andrews, Shaw, Pittman, LLP, McLean, VA, William F. Scully, Jr., Williams, Sennett & Scully, Bruce P. Mandel, Ulmer & Berne, Cleveland, OH, David Craig Landin, Eric L. Horne, Eckert, Seamans, Cherin & Mellott, Pittsburgh, PA, Robin E. Harvey, Baker & Hostetler, Cincinnati, OH, for Defendants.

## MEMORANDUM OF OPINION AND ORDER

POLSTER, District Judge.

Before the Court are Defendants' Motions for Summary Judgment filed by Westinghouse Electric Corporation (**ECF No. 42**), Foster Wheeler Company (**ECF No. 43**), Aurora Pump (**ECF No. 44**); Gulf Engineering Company, Inc. (**ECF No. 45**), Ingersoll Rand Corporation (**ECF No. 46**), Walworth Company (**ECF No. 48**), Crosby Valve, Inc. (**ECF No. 52**), General Electric Company (**ECF No. 53**), Warren Pumps, Inc. (**ECF No. 54**), Crane Company (**ECF No. 56**), A.W. Chesterton Co. (**ECF No. 57**), and Coffin Turbo Pump, Inc. (**ECF No. 59**). Lindstrom filed a Response in Opposition and Defendants filed Reply Briefs.

For the reasons that follow, Defendants' motions for summary judgment are GRANTED.

## I. BACKGROUND FACTS

Plaintiff Rolf Lindstrom ("Lindstrom"), a career merchant mariner, filed this lawsuit against various defendants seeking compensation for his asbestos-related illness. Lindstrom sailed as a merchant seaman from July 1964 until December 1994 aboard numerous vessels. He worked primarily in the engine department in various crew positions, including Fireman/Watertender, Chief, and First, Second and Third Engineer. During his years as a seaman, Lindstrom alleges that he worked with numerous pieces of equipment which exposed him to asbestos and asbestos-containing products. On October 28, 1999, Lindstrom was diagnosed with mesothelioma, a form of cancer, which he claims was caused by asbestos exposure.

As Defendants, Lindstrom has named manufacturers of equipment who utilized asbestos as part of or within their products and manufacturers, distributors, or suppliers of asbestos and asbestos-containing products. These include Westinghouse Electric Corporation (winches), Foster Wheeler Company (boiler), Aurora Pump (pumps, packing, and gaskets), Gulf Engineering Company, Inc. (insulation, sheet packing, and gaskets), Ingersoll Rand Corporation (compressors, gasket kit, and sheet packing), Walworth Company (valves, packing, and gaskets), Crosby Valve, Inc. (valves), General Electric Company (turbine, generators, and winches), Warren Pumps, Inc. (pumps), Crane Company (valves and packing), A.W. Chesterton Co. (installation packing), Coffin Turbo Pump, Inc.(insulation, pumps, gaskets, and packing rings), Goulds Pumps (pumps), John Crane, Inc.(packing and gaskets), Henry Vogt Machine (valves) and collectively Coletec Industries, Anchor Packing Co. (valves) and Garlock, Inc.(sheet packing material). All but three of the above Defendants have moved for summary judgment.

Lindstrom's suit includes claims for negligence under the Jones Act, 46 U.S.C. § 688 *et seq.,* the General Admiralty and Maritime law, and traditional product lia-

bility law. Over the course of the litigation several defendants were voluntarily dismissed or dismissed pursuant to settlement.[1]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmoving party. *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir.1993).

Summary judgment is appropriate if a party which bears the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. In order for there to be a genuine issue for trial, there must be sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. 2505. Having discussed the Rule 56 standard of review, the Court now turns to the merits of each of the Defendants' motions for summary judgment.

## III. ANALYSIS

■■■ In a products liability/asbestos claim a plaintiff must 1) identify an asbestos-containing product for which a defendant is responsible, 2) prove that he has suffered damages, and 3) prove that defendant's asbestos-containing product was a substantial factor in causing his damages. *Roberts v. Owens–Corning Fiberglas Corp.*, 726 F.Supp. 172, 174 (W.D.Mich. 1989); *Stark v. Foster Wheeler Company, Inc.*, Nos. 94 CV 11464, 98 CV 20002, (N.D.Ohio Feb. 18, 1999) (Polster, J.) aff'd, *Stark v. Armstrong World Industries*, 21 Fed.Appx. 371, 376 (6th Cir. Oct.3, 2001) (unpublished). The Sixth Circuit recently held that in order to establish a circumstantial case a plaintiff must show a substantial exposure to a particular defendant's product for a substantial period of time. *Stark*, 21 Fed.Appx. at 380–81. Lindstrom argues that the Court should not rely on the unpublished *Stark v. Armstrong World Industries* decision, and cites *Miller v. American President Lines, Ltd.*, 989 F.2d 1450 (6th Cir.1993) as controlling in the Sixth Circuit. The *Miller* decision, however, addressed liability claims and the standard for causation in a case against shipowners. The *Stark* decision analyzed the causation standard under maritime law for product liability claims asserted against manufacturers. When the facts of an unpublished decision are similar to the case at hand and the reasoning is sound

---

1. Lindstrom has also sued various shipowners and has reached a settlement with these companies.

and persuasive, citation to and reliance on the unpublished opinion is appropriate. *Bob Tatone Ford, Inc. v. Ford Motor Co.,* 197 F.3d 787, 790 (6th Cir.1999); *Oviedo v. Jago,* 809 F.2d 326, 329 n. 3 (6th Cir.1987).

■ In his Supplemental Response Lindstrom argues that there is a genuine issue of material fact as to causation. Lindstrom must show "a substantial exposure for a substantial period of time" in order to prove causation with respect to the product of any particular Defendant. *Stark,* 21 Fed.Appx. at 380–81; *Jackson v. Anchor Packing Co.,* 994 F.2d 1295 (8th Cir.1993) (plaintiff must prove more than the mere presence of asbestos in the workplace and more than a casual or occasional contact with a specific product to establish sufficient exposure). Lindstrom has submitted an affidavit from Joseph M. Corson, M.D. to establish that Lindstrom's exposure to asbestos substantially contributed to his development of mesothelioma. Under Dr. Corson's analysis, "[e]ach of Mr. Lindstrom's occupational exposures to asbestos aboard ship to a reasonable degree of medical certainty were a substantial factor to his development of mesothelioma. The medical and scientific community cannot exclude any specific asbestos exposure as to Mr. Lindstrom's mesothelioma." Affidavit of Dr. Corson ("Dr. Corson Aff."), ¶ 5. Dr. Corson does not specifically reference the product of any particular Defendant. Rather, he opines that there is no safe level of asbestos exposure, and that every exposure to asbestos, however slight, was a substantial factor in causing Lindstrom's disease. If an opinion such as Dr. Corson's would be sufficient for plaintiff to meet his burden, the Sixth Circuit's "substantial factor" test would be meaningless. Accordingly, Dr. Corson's opinion is insufficient as a matter of law to get Lindstrom past summary judgment.

## Viacom, Inc. f/k/a Westinghouse Electric Corporation ("Westinghouse")

In its motion for summary judgment, Westinghouse asserts that Lindstrom has not set forth any evidence to establish that he used asbestos-containing products supplied by Westinghouse Electric or that he was exposed to asbestos fibers as a result. Citing *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), Westinghouse maintains this failure renders summary judgment appropriate.

■ Lindstrom argues that he was exposed to asbestos dust emitted when he replaced brake pads attached to the Westinghouse deck winches and when those brake pads were "blown out" by himself and an electrician when cleaning and inspecting that equipment in his vicinity. *Rolf L. Lindstrom Deposition Transcript* ("Lindstrom Depo."), at 50–51. However, the evidence supporting this argument is insufficient to withstand summary judgment. At deposition, Lindstrom testified that he could not identify the manufacturer of the brake pads that he maintained on the Westinghouse winches. *Lindstrom Depo.* at 51. When asked how frequently he maintained the brake pads, he replied "Not that often." *Id.* Nor could Lindstrom's co-workers, Horace George and William Kammerzell, identify in their depositions any Westinghouse product that was used by or in the vicinity of Lindstrom.

■ Perhaps to bolster this lack of evidence on causation, Lindstrom provided the Court with an excerpt from a "Catalogue of Marine Equipment" published by Westinghouse in *1925. See ECF No. 94,* Exh. A, at 333–335. This exhibit discusses numerous and varied types of brakes used on deck winch motors. *Id.* According to the Catalogue, only one of the types of brakes mentioned, solonoid brakes, "are faced with asbestos having a copper wire

mesh." *Id.* at 335. This is the sole reference to asbestos in the entire excerpt, and is insufficient to establish causation. The solonoid brakes discussed in the Catalogue were lined with asbestos and there is no mention of brake pads. Lindstrom has failed to show that the Westinghouse winches that he serviced *nearly forty years* later contained these asbestos-lined solonoid brakes. Assuming a schedule of maintenance and replacement of brake pads, even if Lindstrom could establish that the ships on which he worked beginning in 1964 contained Westinghouse winches manufactured in 1925, it is unreasonable to assume that any brake pads he serviced were the original brake pads and he has failed to identify the manufacturer of any replacement brake pads that he serviced. A manufacturer is responsible only for its own products and "not for products that may be attached or connected" to the manufacturer's product. *Stark,* Nos. 94 CV 11464, 98 CV 20002, at 9. Accordingly, Westinghouse Electric Corporation's motion for summary judgment is GRANTED.

## Foster Wheeler L.L.C.

■ Foster Wheeler L.L.C. ("Foster Wheeler") has moved for summary judgment on the ground that Lindstrom has failed to produce evidence that he had substantial exposure to any component of a Foster Wheeler boiler for a substantial length of time.

Foster Wheeler admits that *American Courier* was powered by a Foster Wheeler boiler. *ECF No. 120* at 1–2. Lindstrom served for less than two months as a fireman/watertender on this ship. Lindstrom testified that his duties as a fireman/watertender did not cause him to enter any of the boilers and he did not do any repairs on the inside of the boilers. *Lindstrom Depo.* at 160–61. He simply entered the boiler "out of curiosity." *Id.* The mere presence of a Foster Wheeler boiler is not sufficient to establish liability. *Lohrmann v. Pittsburgh Corning Corp.,* 782 F.2d 1156, 1162–63 (4th Cir.1986).

Of the many vessels where Lindstrom actually crawled into the boiler, only the *Marjorie Lykes* was equipped with Foster Wheeler boilers.[2] Foster Wheeler admits that "the insulating block inside the boiler may have contained asbestos, but the refractory brick and the other insulating materials inside the boiler did not contain asbestos." *ECF No. 43* at 2. The insulating block inside the boiler was within an airtight and gastight metal boiler casing; therefore no air or gas inside the boiler could escape. *Id.* at 2. Lindstrom has offered no testimony to establish that he was exposed to any asbestos-containing component of a Foster Wheeler boiler, much less substantial exposure. The

**2.** Lindstrom testified that the *Mormacove* had either Foster Wheeler or Combustion Engineering boilers. The official records of the American Bureau of Shipping establishes that Combustion Engineering boilers were aboard. *ECF No. 43*, Exh. D, Affidavit of Richard Silloway ("Silloway Aff."), ¶ 6 and Exhibits attached. Lindstrom also testified that he thought the boilers on the *President Jefferson* were Foster Wheeler boilers. However, the boilers were supplied by Babcock & Wilcox. *Id.* at ¶ 5.

Kammerzell testified that the *Allison Lykes* was equipped with Foster Wheeler boilers.

The American Bureau of Shipping records establishes that the boilers were supplied by Combustion Engineering. *Silloway Aff.* ¶ 6 and Exhibits attached..

George testified that the *Stella Lykes* had a Foster Wheeler boiler, *George Depo.* at 174, and "every boiler [he] came in contact with utilized asbestos insulation." *George Aff.* ¶ 6. George's testimony is based on his experience from May 16, 1972 to August 11, 1972. Lindstrom did not serve on the *Stella Lykes* until 1986, fourteen years later. Accordingly, George's affidavit testimony is not relevant.

Court accordingly GRANTS Foster Wheeler's motion for summary judgment.

**Aurora Pump Company**

■ To hold Aurora Pump Company ("Aurora") liable, Lindstrom bears the burden of proving that Aurora is responsible for an asbestos-containing product and that the asbestos-containing product was a substantial factor in causing his damages. *Roberts,* 726 F.Supp. at 174; *Stark,* 21 Fed.Appx. at 376. According to Aurora's evidence, the pumps were manufactured with mechanical seals or flexible metallic packing that did not contain asbestos. *ECF No. 114,* Exh. A, Affidavit of Leroy Franklin ("Franklin Aff."), ¶ 5. Lindstrom admitted that when pumps have mechanical seals, rather than packing, "you would do nothing to them," because they lasted a long time. *Lindstrom Depo.* at 179–80.

Lindstrom did not testify that he handled any asbestos in connection with Aurora. A co-worker, Horace George ("George"), testified that Lindstrom "probably" was exposed to asbestos when he changed the packing on these pumps. *Horace George Deposition Transcript* ("George Depo."), at 198–99. The pumps supplied by Aurora did not contain nor were they manufactured for use with asbestos packing. *Franklin Aff.* ¶ 5. If Lindstrom handled any asbestos packing in an Aurora pump, it would have been because someone, subsequent to the original purchase of the pump, changed the mechanical seals to the packing without Aurora's knowledge or approval. Since the packing on the pump exterior was not an Aurora product and, according to George, may have been "furnished by the shipyard," Aurora cannot be held responsible for exposure to the packing. *George Depo.* at 198.

George also testified that Lindstrom "probably" was exposed to asbestos when he changed the gaskets. *George Depo.* at 198–99. Assuming arguendo that Lindstrom changed asbestos gaskets on an Aurora pump, there must be evidence of exposure "on a regular basis over an extended period of time." *Lohrmann,* 782 F.2d at 1162–63. George testified that on an Aurora pump, the gaskets might have to be replaced only once a year and that he recalled three to four Aurora pumps. *George Depo.* at 197–99. A "defendant does not become liable based on a bare demonstration of 'minimal exposure,' even when the plaintiff's injuries arise from the relevant toxic substance." *Roberts,* 726 F.Supp. at 174; *Stark,* 21 Fed.Appx. at 376. As the Sixth Circuit held in *Stark*

> a plaintiff relying on circumstantial evidence of exposure to prove causation [is required] to show a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural. In other words, *substantial* exposure is necessary to draw an inference from circumstantial evidence that the exposure was a *substantial* factor in causing the injury.

*Id.* (quoting *Harbour v. Armstrong World Industries, Inc.,* No. 90–1414, 1991 WL 65201, at *4 (6th Cir. Apr.25, 1991) (unpublished) (emphasis in original)). Any exposure to asbestos due to removing or installing gaskets on an Aurora pump would have been so minuscule as to negate the possibility of it being a substantial factor. Therefore, Aurora Pump Co.'s motion for summary judgment is GRANTED.

**Gulf Engineering Company, Inc.**

To hold Gulf Engineering liable, Lindstrom bears the burden of proving that a Gulf Engineering asbestos-containing product was aboard the ship on which he served. In his deposition, Lindstrom never identified Gulf Engineering as a manufacturer or a supplier of asbestos-contain-

ing products. Only one of his shipmates, George, testified that he remembers Gulf Engineering supplying some products. *George Depo.* at 200. George testified that "in times he was in a position to know," he did not believe the products Gulf Engineering supplied contained asbestos and that he could not say that Lindstrom was exposed to any asbestos from Gulf Engineering products. *Id.* at 200–01. Since Lindstrom has not established that Gulf Engineering was responsible for any asbestos-containing product aboard any vessel on which he sailed, Gulf Engineering's summary judgment is GRANTED.

**Ingersoll Rand Corporation**

Lindstrom's claims against Ingersoll Rand cover compressor, gasket kit, and sheet packing material, which allegedly contained asbestos and which Lindstrom allegedly used or was otherwise exposed to while aboard a ship.

Lindstrom identifies Ingersoll Rand as a manufacturer of compressors but did not testify that he was exposed to asbestos dust emitted from any Ingersoll Rand product, including the compressors. *Lindstrom Depo.* at 49. Lindstrom testified that when he needed to repair a gasket, Ingersoll–Rand had supplied a kit with the gaskets. *Id.* at 178–79. However, Lindstrom did not testify that the gaskets in the kits contained asbestos or that dust was emitted from the kits. Lindstrom did not identify Ingersoll Rand as a manufacturer of any sheet packing material.

George testified that Ingersoll Rand was a manufacturer of pumps. *George Depo.*

at 38. However, George could not establish that an Ingersoll Rand pump was aboard the *Almeria Lykes,* the only ship that Lindstrom and George sailed together on. The mere mention of an Ingersoll–Rand product aboard the same ship as Lindstrom is insufficient to establish that the product was a substantial factor in causation of the injury. *Lohrmann,* 782 F.2d at 1162–63. Accordingly, the Court GRANTS Ingersoll Rand Corporation's motion for summary judgment.

**Walworth Company**

■ Walworth Company ("Walworth") has moved for summary judgment on the ground that Lindstrom lacks evidence to support his claim that any Walworth product proximately caused Lindstrom's mesothelioma.

It is undisputed that Walworth valves were on board and Lindstrom may have worked with them.[3] George testified that Lindstrom was exposed to Walworth valves during the repair and replacement of the packing or gaskets. *George Depo.* at 34–35. George testified that the replacement packing and gasket materials were not supplied by Walworth. *Id.* at 92–93, 97; *see also Cornelsen Aff.* ¶ 14. Because Walworth did not supply the replacement packing or gaskets, Lindstrom would have had to be the first person to remove the original packing or gasket in order to be exposed to the asbestos. The *Almeria Lykes* was commissioned in 1972[4] and the first time George remembers Lindstrom working on a valve was after

---

3. Walworth confirms that some valves may have used asbestos-containing packing and gaskets during certain years. *ECF No. 48,* Affidavit of David Cornelsen ("Cornelsen Aff."), ¶¶ 7; 10–11. The valves that did have asbestos-containing packing material were "completely encased inside the metal bonnet" when the product was sold and installed. *Cornelsen Aff.* ¶ 11.

4. Lindstrom testified that he sailed on *two* vessels by the name of *Almeria Lykes.* Lindstrom sailed on the *Almeria Lykes* from the mid–1970's until 1986. He joined a second, separate ship named *Almeria Lykes* in 1991, which is not the vessel about which George testified. *Lindstrom Depo.* at 166.

1976. *George Depo.* at 87–88. According to George, maintenance on the valves' packing and gaskets "didn't require constant attention" but the valves had to be maintained a couple of times a year. *Id.* at 88. At least four years of maintenance of the valves occurred before Lindstrom began working on any Walworth valve, and there is no evidence that Lindstrom was the first person to remove any original packing or gasket. Therefore, summary judgment is GRANTED to Walworth Company.

**Crosby Valve, Inc.**

■ To satisfy his burden of proof in his claim against Crosby Value ("Crosby"), Lindstrom must identify the injury-causing product and the party responsible for that product. During Lindstrom's deposition, he testified that valves were found in steam drums which used asbestos packing. *Lindstrom Depo.* at 46. However, he never identified Crosby as the manufacturer of a valve or any product that he worked with or was exposed to. Co-worker Kammerzell did not provide any testimony concerning Crosby valves or products or that he saw Lindstrom working with or around Crosby valves or products.

George testified during his deposition that Crosby safety values were used on the steam drums of boilers on ships and were wrapped with asbestos blanket material. *George Depo.* at 33–34. When asked if he remembered seeing Lindstrom working on a Crosby safety valve, George responded "No, not as far as maintenance. It's one of those, we *might* have to take the valve on and off in order to send the valve ashore to authorized repair shops . . . we would, you know, take the insulation away from the bottom, unbolt them, and send them ashore." *Id.* at 182 (emphasis added). George further testified that he did not know who supplied the packing, the asbestos blanket, or the insulation that had

to be pulled away from the bottom of the valve. *Id.* at 182–83. A product seller cannot be held liable under a products liability theory for something other than its own product. *Stark*, Nos. 94 CV 11464, 98 CV 20002, at 9. Accordingly, summary judgment in Crosby Valve, Inc's favor is GRANTED.

**General Electric Company**

■ General Electric Company ("GE") has moved for summary judgment on the ground that Lindstrom lacks evidence to support the claim that any GE product proximately caused Lindstrom's mesothelioma.

According to Lindstrom, GE turbines were on the *Allison Lykes* and the *Almeria Lykes*. *Lindstrom Depo.* at 28; 32. He alleges that certain parts were insulated on the turbine with asbestos-containing insulation material. *Id.* at 36. Neither Lindstrom nor George identified who manufactured or sold the "insulation blankets" that Lindstrom encountered during ship "surveys" involving turbines once every five years. According to a former GE employee, GE manufactured marine steam turbines without any thermal insulation material on them. *ECF No. 53*, Affidavit of David Hobson, ("Hobson Aff."). The turbines were shipped with only a coat of paint on the surface of the metal. *Hobson Aff.* ¶ 5. Any thermal insulation material would have been supplied and installed by the shipbuilders at the shipyard. *Id.* ¶ 6. Lindstrom admitted that when removing the insulation material to gain access to the turbine it was impossible to know whether it was the insulation that had originally been installed on the piece of equipment when the ship was brand new or whether it had been put there by someone in later years. *Id.* at 131–32.

Lindstrom said an unspecified number of cargo winches were made by GE and another manufacturer. *Id.* at 50. Lind-

strom alleges that he was exposed to dust emitted when he replaced brake linings associated with deck winches supplied by GE and when those brake linings were "blown out" by electricians when cleaning and inspecting that equipment in his vicinity. *Lindstrom Depo.* at 50–51. When questioned specifically if GE manufactured the brake pads that had been attached to the winches, Lindstrom admitted that he could not recall who manufactured the brake pads. *Id.* Finally, Lindstrom stated that GE generators were on the *Almeria Lykes,* but he said nothing about any asbestos in connection with them. *Id.* at 32.

Since Lindstrom has not shown GE to be the manufacturer of any asbestos-containing products with which he came in contact, GE's motion for summary judgment is GRANTED.

**Warren Pumps, Inc.**

Warren Pumps moves for summary judgment on the basis that Lindstrom has not produced any evidence that he was ever near a Warren Pump or exposed to any internal Warren Pump materials that might have contained asbestos.

Lindstrom has not demonstrated that Warren Pumps was a manufacturer, supplier or distributor of any asbestos-containing product that was present at the time he sailed aboard ship. In fact, Lindstrom's and Kammerzell's testimony does not even mention Warren Pumps. Lindstrom attempts to use shipmate Horace George's testimony to establish that Warren Pumps' products were on the vessels. Specifically, George testified as follows:

Q. Could you recall some of the other manufacturers of that equipment?

A. You mean specific pumps and the like?

Q. Yes, sir.

A. Such as Aurora pumps, Warren pumps, and Ingersoll–Rand. And

then there were—outside of the machinery spaces, there were others, but I don't recall the manufacturers' name right now.

*George Depo.* at 38:15–23.

Q. Could you next describe for us what sort of equipment Warren Pumps manufactured that was placed in service aboard your vessel?

A. These were general—I'd rather not commit right now.

*George Depo.* at 39:25; 40:1–3.

Q. Yesterday morning you were asked by Krispin about Warren pumps. And at that time, if I have quote correctly, you said, "I'd rather not commit right now. I'll have to give some thought on it."

And I have reviewed Lindstrom's deposition, and he has no mention of Warren pumps being on any of the ships.

Now that you've had that additional time, do you have any recollection one way or the other?

A. Of the Warren pump?

Q. Yes.

A. In reference to the Almeria Lykes?

Q. Yes.

A. *I don't want to give you a specific location,* because I am a little bit shady in that part of my memory. I would prefer not to commit there.

Q. Would the same be true for that other one? Was it the Sue Lykes?

A. Yes, because we were running into some different manufacturers there. And between the last few ships I want to—I want to watch my comments, because I can—I don't want to give you erroneous information.

*George Depo.* at 225:22; 226:1–21 (emphasis added).

George's testimony fails to a) identify any Warren Pumps asbestos-containing product that was on the ship at the same time as Lindstrom, b) identify which ship had Warren Pumps' products on board, or identify any Warren Pumps' product upon which he saw Lindstrom working. Accordingly, the Court GRANTS Warren Pumps's motion for summary judgment.

## Crane Company

Crane Company ("Crane") correctly argues that for Lindstrom to survive a motion for summary judgment, he must demonstrate that an asbestos containing-product manufactured or sold by Crane was aboard a ship on which Lindstrom served. The Court concludes that Lindstrom has not met this burden.

Lindstrom testified that he recalled working with or around valves. When asked who manufactured any of the valves Lindstrom identified two other companies and then also stated "I think Crane." *Lindstrom Depo.* at 46. Lindstrom testified that most of the valves contained asbestos packing which would have to be occasionally replaced. *Id.* When asked to recall which companies manufactured the asbestos packing Lindstrom did not identify Crane Co. but identified John Crane. *Id.* at 46–47.

In his two-day deposition, George did not identify Crane Co. as a manufacturer or supplier of valves or the thermal packing material. Kammerzell's only reference to Crane was in the following exchange:

Q. You mentioned earlier, when you were talking about the packing of the glands in the pump, that you didn't know if Worthington pump made its own packing. Is that correct?

A. I don't believe they did. It would have been Crane packing, or what-

ever packing was on the ship besides John Crane.

*William Kammerzell Deposition Transcript* ("Kammerzell Depo.") at 96. Since John Crane is a separate defendant in this case, the evidence Lindstrom presents to this Court must clearly establish that Crane Co. was the manufacturer or supplier of a specific asbestos-containing product. Because a company cannot be held liable on speculation that a product might have been aboard, Crane Company's summary judgment motion is GRANTED.

## A.W. Chesterton Company

A.W. Chesterton Company ("Chesterton") moves for summary judgment on the basis that Lindstrom has not produced any evidence that a Chesterton product contained asbestos or that any Chesterton product was a substantial factor in causing his injuries.

Lindstrom testified that he used Chesterton packing to repair water pumps by placing the packing inside the sealed metal casing of the pump. *Lindstrom Depo.* at 141–42. Lindstrom admitted that when cutting and installing the Chesterton packing, which was teflon coated, *no dust* was created. *Id.* at 142. Without exposure to actual dust or fibers created by a Chesterton product, Lindstrom cannot establish an inference that he was injured by any Chesterton product. *Stark,* 21 Fed.Appx. at 376; *Miller v. American President Lines, Ltd.,* 989 F.2d 1450, 1465 (6th Cir.1993); *Roehling v. National Gypsum Co. Gold Bond Bldg. Products,* 786 F.2d 1225, 1228 (4th Cir.1986) (holding that when a plaintiff can establish that she was in the vicinity in which asbestos dust from defendants' products was inhaled, "a jury can reasonably infer that plaintiff was injured by defendants' products."). Furthermore, Lindstrom admitted that he did not know

whether or not the Chesterton packing contained asbestos.[5] *Id.* at 141.

Because Lindstrom is unable to establish that Chesterton products contained asbestos summary judgment is GRANTED to A.W. Chesterton Co.

## Coffin Turbo Pump, Inc.

▆▆ In its motion for summary judgment, Coffin Turbo Pump ("Coffin") asserts that Lindstrom has not set forth any evidence to establish that he was exposed to asbestos from a Coffin product and that a Coffin product was a substantial factor in producing his injury. Lindstrom alleges he was exposed to asbestos by 1) insulation covering the exterior of the pump, 2) gaskets located on the pump throttle, 3) packing in the valve stem, and 4) packing rings contained in the pump.

A manufacturer is responsible only for its own products and "not for products that may be attached or connected" to the manufacturer's product. *Stark*, Nos. 94 CV 11464, 98 CV 20002, at 9. Lindstrom testified that there was *no insulation* on brand-new Coffin pumps. *Lindstrom Depo.* at 150. He stated that Coffin pumps were covered with asbestos insulation which probably was put on by the shipyard. *Id.* at 150–51. Lindstrom's Exhibit A, "Coffin's Product Literature," establishes that Coffin manufactured pumps and not packing material. *See ECF No.* 112. Since the insulation on the pump exterior was not a Coffin product and was put on by the shipyard, Coffin cannot be

held responsible for exposure to the exterior insulation.

Lindstrom testified that the replacement gaskets were not a Coffin product. *Lindstrom Depo.* at 158–59. George testified that the gaskets used on the Coffin pump were not manufactured or provided by Coffin. *George Depo.* at 195. Based on Lindstrom's own testimony and George's testimony, Coffin is not liable for exposure to any gasket that was manufactured or provided by another company.

Lindstrom testified to exposure from asbestos-containing packing rings and packing in the valve stem[6] that were contained in Coffin's pumps. Lindstrom testified that the packing rings were graphite coated, sat in either water or steam, and when the packing rings were removed from the water they slid right off the shaft and were *not dusty. Lindstrom Depo.* at 151–52. Lindstrom testified that new packing rings were dusty, however he did not know the make up of the dust and could not say that it was asbestos. *Id.* at 152. Lindstrom never stated how many times he had to replace a packing ring with a new packing ring.

Lindstrom testified that the Coffin pumps contained asbestos packing in the valve stem and he worked on this packing "dozens of times." *Id.* at 153, 158. The Sixth Circuit has held that liability cannot be predicated on minimal or limited exposure to a defendant's product, and that substantial exposure must be proven. *Stark*, 21 Fed.Appx. at 376. The Fourth

---

5. Lindstrom offered the testimony of co-worker George to establish that Lindstrom was exposed to asbestos as a result of working with packing. However, a review of the testimony establishes that Lindstrom and George did not work together during the period that Lindstrom was exposed to Chesterton products. Lindstrom testified that he was only exposed to Chesterton products from 1986 to 1993. *Lindstrom Depo.* at 141–43; 169–71.

George worked with Lindstrom from 1974 to 1986 aboard a different vessel, also called the *Almeria Lykes. George Depo.* at 11.

6. In the depositions and briefs, the references to packing rings and packing in the valves did not make clear if these are the same item or two different items. The Court has therefore analyzed each item separately.

Circuit explained "to support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Lohrmann,* 782 F.2d at 1162–63. Therefore, Lindstrom needs to show more than a casual or occasional contact with a specific product to establish sufficient exposure. *Id.* at 1163 (exposure to an asbestos-containing pipe covering on 10–15 occasions for up to 8 hours at a time during a 39–year work history was insufficient to establish substantial exposure); *Gideon v. Johns–Manville Sales Corp.,* 761 F.2d 1129, 1144–45 (5th Cir.1985) (evidence of exposure was insufficient to overcome summary judgment when plaintiff demonstrated "slight contact" with the asbestos-containing products he handled and failed to show any dust was created when he was around the product.). Lindstrom has failed to establish that dust was created from the packing on the valve stem. He did testify that dust was created only when he removed insulation from the outside of the pump. *Lindstrom Depo.* at 183. As previously discussed, there is no evidence that Coffin manufactured, sold or distributed the exterior insulation. This Court finds that Lindstrom has not satisfied his burden of proof in his claim against Coffin Turbo, Inc. Accordingly, Coffin Turbo, Inc.'s motion for summary judgment is GRANTED.

In accordance with the foregoing opinion, the motions for summary judgment filed by Westinghouse Electric Corporation (**ECF No. 42**); Foster Wheeler Company (**ECF No. 43**); Aurora Pump (**ECF No. 44**); Gulf Engineering Company, Inc. (**ECF No. 45**); Ingersoll Rand Corporation (**ECF No. 46**); Walworth Company (**ECF No. 48**); Crosby Valve, Inc. (**ECF No. 52**); General Electric Company (**ECF No. 53**); Warren Pumps, Inc. (**ECF No.** 54); Crane Company (**ECF No. 56**); A.W. Chesterton Co. (**ECF No. 57**); and Coffin Turbo Pump, Inc. (**ECF No. 59**) are **GRANTED**.

Accordingly, the claims brought by Plaintiff Rolf L. Lindstrom against the aforementioned Defendants are hereby dismissed with prejudice. All cross-claims or third party claims brought against any of these Defendants are also dismissed with prejudice.

**IT IS SO ORDERED.**